Pro Se 1 (Rev. 12/16) Complaint for a Civil Case



# UNITED STATES DISTRICT COURT

for the

Eastern District of California

Civil __Rights Rights Civil Rights



NOV 23 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
           DEPUTY CLERK

| | |
|---|---|
| Jean Marc Van den Heuvel Pro-Se-Stroke survivor 8/10/2014 Brain Injury Abused by ElDorado County Library Banishments | Case No. 2:21-CV-2176-TLN CKD PS |
| *Plaintiff(s)* | *(to be filled in by the Clerk's Office)* |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Jury Trial: *(check one)* ☑ Yes ☐ No |
| –v– | |
| ElDorado County Public Library Staff Placerville,Cameron Park California Abuses and Civiln Rights Violations. | |
| *Defendant(s)* | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | |

## COMPLAINT FOR A CIVIL CASE

### I.    The Parties to This Complaint

#### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Jean Marc Van den Heuvel : Medical Stroke : 8/10/2014 |
| Street Address | General Homeless Postal Delivery,3045 Sacramento Street |
| City and County | Placerville ElDorado County |
| State and Zip Code | California 95667 |
| Telephone Number | 916-595-8971 |
| E-mail Address | jeanmarc57@juno.com |

#### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

**Defendant No. 1**

| | |
|---|---|
| Name | Dorthy the entitled librarian claims of injuries by victim role |
| Job or Title *(if known)* | Staff librarian |
| Street Address | 345 Fair Lane |
| City and County | Placerville ElDorado County |
| State and Zip Code | California 95667 |
| Telephone Number | 530-621-5540 |
| E-mail Address *(if known)* | N.A. |

**Defendant No. 2**

| | |
|---|---|
| Name | Krystal the entitled abusive librarian of police resources:threats |
| Job or Title *(if known)* | Staff librarian |
| Street Address | 345 Fair Lane |
| City and County | Placerville ElDorado County |
| State and Zip Code | California 95667 |
| Telephone Number | 530-621-5540 |
| E-mail Address *(if known)* | N.A. |

**Defendant No. 3**

| | |
|---|---|
| Name | Carolyn the head librarian of "all the ElDorado County libraries" |
| Job or Title *(if known)* | Head librarian enforcer of unethical banishments and exclusions |
| Street Address | 7455 Silva Valley Parkway |
| City and County | ElDorado Hills ElDorado County |
| State and Zip Code | California 95762 |
| Telephone Number | 916-358-3500 |
| E-mail Address *(if known)* | N.A. |

**Defendant No. 4**

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

## II.     Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

[✔] Federal question                    [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.     If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.
McCook, K., & Phenix, K. J. (2006). Public libraries and human rights. Public Library Quarterly, 25, 57-73. doi:10.1300/J118v25n01_05  #2   Code of Federal Regulations. Washington, DC: Office of the Federal Register: http://www.nara.gov, 1939- . DESCRIPTION:The Code of Federal Regulations (CFR) contains federal regulations organized by subject into fifty titles. The CFR is published annually on a quarterly schedule throughout the year.

### B.     If the Basis for Jurisdiction Is Diversity of Citizenship

1.     The Plaintiff(s)

a.     If the plaintiff is an individual

The plaintiff, *(name)* N.A.                           , is a citizen of the State of *(name)* _____.

b.     If the plaintiff is a corporation

The plaintiff, *(name)* N.A.                           , is incorporated under the laws of the State of *(name)* _____ ,
and has its principal place of business in the State of *(name)* _____
_____.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.     The Defendant(s)

a.     If the defendant is an individual

The defendant, *(name)* N.A,                          , is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

    b.    If the defendant is a corporation

        The defendant, *(name)*  N.A.                          , is incorporated under

        the laws of the State of *(name)*                        , and has its

        principal place of business in the State of *(name)*                        .

        Or is incorporated under the laws of *(foreign nation)*                      ,

        and has its principal place of business in *(name)*                       .

        *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

    3.    The Amount in Controversy

        The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

        $100,000.00 for the intent injuries from the intent rejections of due civil rights usage of a public library to process important timely claims in different law claims with timely responce times,absent the "victim roles" of offended errors made by library staff personels,growing into massive conclusive justified injuries to a person. The person(s) in subject are the "reactive" victims of an assumed injuries to the created " over sensitive persons becoming victims"

## III.   Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

The careful instructions to "print #3 copies" of a half page document placed on the top of a second page that reflects the importance of relativity by account informations fastened by a paper clip.The ignorant charges for the costs of the misundestood multiple large capacity printwork completed by the overly sensitive "victim roles" Dorthy played a massive misleadings of assumptions,causing the high blood preasures of the Plaintiff to argue the disatisfactions of costs related to the massive expense by the sheemish victim role persons,Dorthy by offences and dirrect "conflict" wich turned out to be expensive in the absence to process cases that are time sensitive at the eastern District court .The massive #5 weeks were established by force on a Friday one day prior to the one week expultions at the Placerville Postal Office at the Cameron Park Library by sheriff escorts.

## IV.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

The damages at the losses of rights to utilize a "public library to trust in the workers performances at the requests made by the patrons.This library had extremely harsh guidelines for my stroke emotional support dog Toby.Toby would sometimes bark when he saw another dog in the library,causing the imediate expultions by Krystal and other staff members that heard the muffled bark by Toby. Toby was placed in the medical stroke "emotional support dog" on 8/10/2014 and was a family member since February 2005 at Hollister California where he was gracioulty put into my lifes enduring conditions,absent the home we lived in by also other leagal battles that diminished our lives over the many years since the "revocations of my California state License on 11/07/2007.

The compounded injuries that occure at different "defendants" in the Plaintiffs"incidental life" are massive and conclusively distracting from any types of "artistic endevors" and ability to simply create.This library kept this Plaintiff extremely busy facing hard challenges by the " nazi staffs" that played the "victim roles in their occupations of service for the public,ignoring civil rights due for the handicapped persons utilyzing their public libraries.

The original offense to librarian " Dorthy" occured on a Saturday at the Placerville public library,and notice of expultions were made for one week.Police officer came to remove the Plaintiffs presence from that public library:

## V.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          11/17/2021

Signature of Plaintiff

Printed Name of Plaintiff      Jean Marc Van den Heuvel  Pro Se Stroke Survivor.

### B.     For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Jean Marc vs. ElDorado County Library Staff | |

**ATTACHMENT** *(Number):* #1

*(This Attachment may be used with any Judicial Council form.)*

Continued statement of Injury Statement of Claim:  III

The head libraian Carole called the ElDorado County Sheriff and had that officer escort the Plaintiff out of the library on the day before the final original bann requests at the Placerville public library.The officer came to that public library and a referance to why he had arrived came from the unsuspecting Jean Marc on that day,and the officer esorted the Plaintiff out of the library and was given the news of the extended expultions by Carolyn to be #4 weeks.

The staffs at the Camreon Park Library welcomed the Plaintiff on that Monday,as that library is openn on Mondays,and serves the general public,and attentions were provided to the Plaintiff concerning new guidelines for behaviors at that public library,at Cameron Park.The news of the conflict had been shared with a head staffs of that Camron Park library and open arms were made understood by staffs and stroke survivor illtolerant P.T.S.D. Plaintiff,the arrivals of Carolyn on the coming Friday was a violations of the civil rights as outlined previously.

The over-extended time implimented by the contentious head librarian was a harsh,intent punishments thay interfeared with the process of self represented law practices with a "broken stroke brain"

The incredible intent injuries by "coersions" to have police remove a patron from their publuic library is unconstitutional and violates multiple civil rights,include the "known handicapped stroke survivor via emotional service dog" implimented harsh expultions fromm the uses of the "PUBLIC" library,and reguards of creating a massive orders by implications of "ENTIRE ELDORADO COUNTY LIBRARIES" at the almost concluded absence,or ejections from the Placerville public library for the complaint that costs Social Security costs,and overpayment by errors of libraian Dorthy.

This massive personal injury was not necessary at all,people need to understand peoples requests and sustain civilities as they practice their public service at this ElDorado County Library "NET WORKS" made at the final day of expultions causing more injuries by contentments and aggrivated assaults to a "highly tempermental P.T.S.D. " stroke survivor,making "fists with his feet"

I delare this statement to be true and factuals in relations to the civil suit filed at the Ubited States Court of the Eastern District of California on 11/17/2021 .

JEAN MARC VAN DEN HEUVEL  .

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page _____ of _____

*(Add pages as required)*

**ATTACHMENT
to Judicial Council Form**

*www.courtinfo.ca.gov*

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Jean Marc vs. ElDorado County Library staff | |

**ATTACHMENT** (Number): #2

*(This Attachment may be used with any Judicial Council form.)*

The library staff abused its authority over the general public by multiple implications of ignorant selfish placements of unconstitutional requests,and abanishments by police force on several occasions with the emotional service dog Toby a Jack russel Terrier that was killed on May 13,2021 By a selfish woman wanting to throw her trash into a relative dumpster.Thiis major loss implimented such grieffs and misunderstandings in our human societies ultimate selfishness and "entitlements" of unreasonable measures of justified placements of "denounced" arguments and statements of "self convenience"

This explanations of some of the actions by the ignorant selfish "Nazi" librarians implimenting harshness on a handicapped persons,utilizing the cares of the library at minimal social security income from a brain injury on 8/10/2014 and the ignorant false arrests on May 10,2017 caused great measures of iltolerable behaviors by the " uncooperative victim Dorthy" causing the inflamed process of persecutions and disallowments of use at the public library at an additional stated measures by Carolyn visting the Cameron Park Branch and quietly calling the Eldorado county sheriffs to escort Mr.Van den Heuvel for an overextended #5 weeks,and different than what Krystal informed the completions of expultions would be on the anticipated and regulated Krystal on November 5,2021,moved to November 9,2021 by cruelty and superior reigns of power by the contentious Carolyn,head librarian.

Once codes of conduct are ratified, they can be difficult to access. A review of the patron codes of conduct of the ten biggest library systems (as defined by the ALA ' s metric of " population of legal service area " ), revealed that a majority of these systems listed their patrons code of conduct online in English and Spanish, and sometimes in other languages. However, this practice did not permeate smaller systems, with some systems only listing their codes of conduct in English and others not listing codes at all.

When patrons are suspended for violating these sometimes-mysterious codes, they may or may not have access to an appeals process. Some systems require patrons to appeal their suspensions directly to the library president within a certain deadline and in writing. Others allow appeals for exclusively serious bans that last over a year, severely limiting access to libraries for those suspended for less than a year. " Rules of procedure " tend to severely disadvantage the suspended patron with short appeals deadlines, high burdens of proof, and no information on how to appeal a suspension. Maricopa County Library District, New York Public Library, and Chicago Public Library, the largest, third largest, and fifth largest systems in the country respectively, do not indicate on their websites whether or not patrons can appeal their suspensions whatsoever.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page _____ of _____

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

www.courtinfo.ca.gov

42 USC 1983: Civil action for deprivation of rights
Text contains those laws in effect on November 17, 2021

**From Title 42-THE PUBLIC HEALTH AND WELFARE**
    CHAPTER 21-CIVIL RIGHTS
    SUBCHAPTER I-GENERALLY
**Jump To:**
    Source Credit
    Codification
    Amendments
    Effective Date

# §1983. Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

(R.S. §1979; Pub. L. 96–170, §1, Dec. 29, 1979, 93 Stat. 1284 ; Pub. L. 104–317, title III, §309(c), Oct. 19, 1996, 110 Stat. 3853 .)

## CODIFICATION

R.S. §1979 derived from act Apr. 20, 1871, ch. 22, §1, 17 Stat. 13 .

Section was formerly classified to section 43 of Title 8, Aliens and Nationality.

## AMENDMENTS

**1996**-Pub. L. 104–317 inserted before period at end of first sentence ", except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable".

**1979**-Pub. L. 96–170 inserted "or the District of Columbia" after "Territory", and provisions relating to Acts of Congress applicable solely to the District of Columbia.

## EFFECTIVE DATE OF 1979 AMENDMENT

Amendment by Pub. L. 96–170 applicable with respect to any deprivation of rights, privileges, or immunities secured by the Constitution and laws occurring after Dec. 29, 1979, see section 3 of Pub. L. 96–170, set out as a note under section 1343 of Title 28, Judiciary and Judicial Procedure.

# 26 U.S. Code § 262.Personal, living, and family expenses

| U.S. Code | Notes |
| --- | --- |

**(a)GENERAL RULE**

Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

**(b)TREATMENT OF CERTAIN PHONE EXPENSES**

For purposes of subsection (a), in the case of an individual, any charge (including taxes thereon) for basic local telephone service with respect to the 1st telephone line provided to any residence of the taxpayer shall be treated as a personal expense.

(Aug. 16, 1954, ch. 736, 68A Stat. 76; Pub. L. 100–647, title V, § 5073(a), Nov. 10, 1988, 102 Stat. 3682.)

# Guidelines for the Development of Policies and Procedures Regarding User Behavior and Library Usage

To ensure the effective delivery of service and to provide full access to library resources, libraries should develop policies and procedures to address user behavior that may interfere with others' use and enjoyment[1] of the library. Library governing bodies should approach the regulation of user behavior within the framework of the *Code of Ethics of the American Library Association*, the *Library Bill of Rights*, and federal, tribal, state, and local law, including the First and Fourteenth Amendments.

There is a significant government interest in maintaining a library environment that is conducive to all users' exercise of their constitutionally protected right to receive information.[2] This significant interest authorizes publicly supported libraries to maintain a safe and healthy environment in which library users and staff can be free from harassment and threats to their safety and well-being. In order to protect all library users' right to access library facilities, to ensure the safety of users and staff, and to protect library resources and facilities from damage, the library's governing authority may impose reasonable restrictions on the time, place, or manner of library access. Since the *Library Bill of Rights* "affirms that all libraries are forums for information and ideas," all libraries are encouraged to observe these guidelines as they develop policies, regulations, and procedures.

## Policy Checklist--User Behavior and Library Use

The American Library Association's Intellectual Freedom Committee recommends that publicly supported libraries use the following guidelines to develop policies and procedures governing the use of library facilities:

- Library policies and procedures governing the use of library facilities should be carefully examined to ensure that they embody the principles expressed in the Library Bill of Rights.

- Libraries are advised to rely upon existing legislation and law-enforcement mechanisms as the primary means of regulating behavior that involves public safety, criminal behavior, or other issues covered by existing federal, tribal, state, or local law.

- If the library's governing body chooses to write its own policies and procedures regarding user behavior or access to library facilities, services, and resources, the policies should cite statutes or ordinances upon which the authority to make those policies is based.

- Reasonable and narrowly tailored policies and procedures are acceptable when designed either to prohibit a person's interference with others' use of the library and its services or to prohibit activities inconsistent with the library's mission and objectives.

- Such policies and procedures should be reviewed frequently and updated as needed by the library's legal counsel for compliance with federal, tribal, state, and local law.

- Every effort should be made to respond to potentially difficult circumstances of user behavior in a timely, direct, and transparent fashion. Common sense, reason, and sensitivity should be used to resolve issues in a constructive and positive manner without escalation.

- Libraries should develop ongoing staff training programs based on their user behavior policy. Staff training should address the provision of service to people with disabilities, members of marginalized and traditionally underserved populations, and those experiencing poverty and homelessness, as well as the social, economic, and cultural diversity within communities. Training should also address the unique challenges that library workers face in working in tribal, urban, suburban, and rural communities.

- Libraries should attempt to balance competing interests and avoid favoring the majority at the expense of an individual's right to access or use library resources and services. Similarly, libraries should not allow any one person's choice or belief to supersede those of the majority of library users.

- Policies and regulations that impose restrictions on library access should

1. apply only to those activities that substantially interfere with the public's right of access to library facilities, the safety of users and staff, and the protection of library resources and facilities;

2. narrowly tailor prohibitions or restrictions so that they are no more restrictive than needed to serve their objectives;

3. be based solely upon actual behavior and not upon arbitrary distinctions between individuals or groups based on race, ethnicity, national origin, sexual orientation, gender, gender identity, religious affiliation, age, disability, or disease;

4. be enforced consistently and not in a manner intended to benefit or disfavor any person or group in an arbitrary or capricious manner;

5. provide a clear description of the prohibited behavior and the consequences for engaging in that behavior; and

6. describe the enforcement measures in place, including due process and fair warning.

- Policies and regulations that impose restrictions on library access should not

1. target specific users or groups based upon an assumption or expectation that they might engage in behaviors that could disrupt library services;

2. leave those affected without adequate alternative means of access to information in the library;

3. be used to limit library users' access to constitutionally protected speech that may be considered controversial or objectionable by some; or

4. restrict access to the library by persons who merely inspire the anger or annoyance of others. Policies based upon appearance or behavior that is merely annoying, or that generates negative subjective reactions from others, do not meet the necessary standard. Such policies should employ a reasonable, objective standard based on the behavior itself.

The user behaviors addressed in these guidelines are the result of a wide variety of individual and societal conditions. Libraries should take advantage of the expertise of local social service agencies, advocacy groups, mental-health professionals, law-enforcement officials, and other community resources to develop community strategies for addressing the needs of a diverse population.

The policy and its descriptions should be continuously and clearly communicated to all library users in all languages in common use in the library's communities.

[1] The word "enjoyment" is used in a number of court decisions addressing regulation of library users' behavior and appearance. For example, the seminal *Kreimer v. Morristown* decision states that libraries may adopt regulations that prevent individuals from "unreasonably interfering with other patrons' use and enjoyment of the Library." In the law, the usage "quiet enjoyment" is used to refer to undisturbed occupancy and use of a space or property.

2. *Kreimer v. Bureau of Police for Morristown*, 958 F.2d 1242 (3d Cir. 1992)


## Definitions

**Due process**: The principle, encapsulated in the Fifth and Fourteenth Amendments, that neither the federal nor state and local governments may deprive of life, liberty, or property without appropriate legal procedures and safeguards, such as a right to appeal an adverse decision by a court or a government agency.

**Protected speech**: Speech that is protected from government censorship or regulation under the First Amendment, as interpreted by the U.S. Supreme Court. Under the law, speech is considered protected speech until a court determines that it falls into a category of unprotected speech. The U.S. Supreme Court has identified several categories of speech that are unprotected by the First Amendment.

**Publicly supported libraries**: Libraries established by a government entity or libraries that received the majority of their financial support from government funding.

**Significant or Compelling government interest**: A term used by courts when assessing the burden of government regulation or action upon the exercise of a fundamental right, such as freedom of speech. For sure a rule to withstand constitutional challenge, the government must show more than a merely important reason for the rule. The reason for the rule must be compelling; that is, it must be so important that it outweighs even the most valued and basic freedom it negatively affects.

**Strict scrutiny**: Test applied to determine whether a restriction on speech is unconstitutional under the First Amendment. To justify a restriction on speech, the government must show that: (1) it has a compelling interest in enforcing the restriction; (2) the restriction is narrowly tailored to achieve that compelling interest; and (3) there is no less restrictive alternative to achieving that interest.

**Unprotected speech**: Speech or expressive activity that is not protected by the First Amendment. The main categories of unprotected speech identified by the U.S. Supreme Court include obscenity, child pornography, defamation and expression intended and likely to incite imminent lawless action, such as fighting words or true threats.

Adopted by the Intellectual Freedom Committee, January 24, 1993; revised November 17, 2000; January 19, 2005; March 29, 2014; March 24, 2019; July 29, 2019; and August 16, 2020.

# Guidelines for Library Policies

The American Library Association has adopted the *Library Bill of Rights* and interpretations of the *Library Bill of Rights* to provide library governing authorities, library workers, and library users with guidelines on how constitutional principles apply to U.S. libraries.

Publicly supported libraries exist within the context of a body of law derived from the U.S. Constitution, defined by federal, state, local, and tribal law, and implemented by regulations, policies, and procedures established by their governing bodies and administrations. These regulations, policies, and procedures establish the mission of the library; define its functions, services, and operations; and help ascertain the rights and responsibilities of the individuals served by the library.

Publicly supported library service is based upon the First Amendment right of free expression. The publicly supported library is a government entity that provides free, equal, and equitable access to information for all people of the community it serves. When this purpose is confirmed in policies and practices, the library is a designated limited public forum for access to information. When library policies or practices make meeting rooms, exhibit spaces, or bulletin boards available for public use, these spaces are designated as limited public forums for the exchange of information.

Because the *Library Bill of Rights* "affirms that all libraries are forums for information and ideas," libraries that are not publicly supported also are encouraged to observe these guidelines as they develop policies, regulations, and procedures.

Libraries adopt administrative policies and procedures to regulate the organization and use of library materials, services, and facilities. These policies and procedures may have the effect of restricting, denying, or creating barriers to access to the library as a public forum, including the library's resources, facilities, and services. Library policies and procedures that impinge upon First Amendment rights are subject to a higher standard of review than may be required in the policies of other public services and facilities.

Public libraries function as limited public forums for access to information. Article V of the *Library Bill of Rights* states: "A person's right to use a library should not be denied or abridged because of origin, age, background, or views." Thus, policies, procedures, or regulations that may result in denying, restricting, or creating physical or economic barriers to access to the library's public forum must be based on a compelling government interest. However, publicly supported libraries' governing authorities may place reasonable and narrowly drawn restrictions on the time, place, or manner of access to library resources, services, or facilities, provided that such restrictions are content neutral and are not based upon arbitrary distinctions between individuals or classes of individuals. Some examples of such distinctions would be restricting access based on citizenship or immigration status, restricting access for minors to resources routinely provided to adults, restricting access based on financial means or housing status, or restricting access based on partisan or doctrinal disapproval of the user's views or of the information the user seeks.

Libraries should develop ongoing training programs to foster understanding of the legal framework and principles underlying library policies. Training should also help library workers gain the skills and

ability to respond to potentially difficult circumstances in a timely, direct, and open manner. This program should include training to help develop empathy and understanding of the barriers facing some library users.

All library policies, regulations, and procedures should be carefully examined to avoid denying or restricting access or creating barriers to access. All policies should

1. be developed and implemented within the legal framework that applies to the library (including the U.S. Constitution, especially the First Amendment, and those provisions addressing due process and equal and equitable treatment under the law as provided in the amendments to the U.S. Constitution and all other applicable federal, state, local, and tribal law);

2. cite statutes or ordinances upon which the authority to make that policy is based, when appropriate;

3. be developed and implemented within the framework of the Library Bill of Rights and its interpretations;

4. be based upon the library's mission and objectives;

5. avoid restrictions on the access to or use of library resources, services, or facilities unless those restrictions are necessary to achieve the library's mission and objectives;

6. tailor prohibitions or restrictions narrowly, in the rare instances when they are required, so they are not more restrictive than necessary to serve their objectives;

7. balance competing interests and avoid favoring the majority at the expense of individual rights;

8. avoid arbitrary distinctions between individuals or classes of users and denying or abridging a person's right to use library resources, services, or facilities based upon arbitrary distinctions such as origin, age, background, or views[1];

9. not target specific users or groups of users based upon an assumption or expectation that such users might engage in behavior that will materially interfere with the achievement of substantial library objectives;

10. be clearly stated so that a reasonable person will have fair warning of what is expected;

11. provide a means of appeal;

12. be reviewed regularly by the library's governing authority and legal counsel;

13. be communicated clearly and made available to all library users in an effective manner; and

14. be enforced evenhandedly and not in a manner intended to benefit or disfavor any person or group in an arbitrary manner.

ALA's Intellectual Freedom Committee recommends that publicly supported libraries use the above guidelines, based on constitutional principles, to develop policies, regulations, and procedures.

[1] In the *Library Bill of Rights* and all its interpretations, it is intended that "origin" encompasses all the characteristics of individuals that are inherent in the circumstances of their birth; "age" encompasses all the characteristics of individuals that are inherent in their levels of

development and maturity; "background" encompasses all the characteristics of individuals that are a result of their life experiences; and "views" encompasses all the opinions and beliefs held and expressed by individuals.

Adopted by the ALA Intellectual Freedom Committee June 28, 1994; revised January 19, 2005; March 29, 2014; and June 24, 2019.

# Code of Federal Regulations

\*    \*    \*    \*    \*    \*    \*

## Title 42

\*    \*    \*    \*    \*    \*    \*

## §8.2. Definitions.[3]

The following definitions apply to this part:\*  \*  \*

*Opioid agonist treatment medication* means any opioid agonist drug that is approved by the Food and Drug Administration under section 505 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355) for use in the treatment of opiate addiction.

*Opioid dependence* means repeated self-administration that usually results in opioid tolerance, withdrawal symptoms, and compulsive drug-taking. Dependence may occur with or without the physiological symptoms of tolerance and withdrawal.

*Opioid drug* means any drug having an addiction-forming or addiction-sustaining liability similar to morphine or being capable of conversion into a drug having such addiction-forming or addiction- sustaining liability.

*Opioid treatment program* or "OTP" means a program or practitioner engaged in opioid treatment of individuals with an opioid agonist treatment medication registered under 21 U.S.C. 823(g)(1).

*Opioid treatment program certification* means the process by which SAMHSA determines that an opioid treatment program is qualified to provide opioid treatment under the Federal opioid treatment standards described in § 8.12.

*Opioid use disorder* means a cluster of cognitive, behavioral, and physiological symptoms in which the individual continues use of opioids despite significant opioid-induced problems.

*Opioid use disorder treatment* means the dispensing of an opioid agonist treatment medication, along with a comprehensive range of medical and rehabilitative services, when clinically necessary, to an individual to alleviate the adverse medical, psychological, or physical effects incident to an opioid use disorder. This term includes a range of services including detoxification treatment, short-term detoxification treatment, long-term detoxification treatment, maintenance treatment, comprehensive maintenance treatment, and interim maintenance treatment.

## CHAPTER THREE

**3**

# Relevant Laws and Regulations for Libraries

[Disclaimer: *The information in this handbook is <u>not</u> legal advice. We recommend that you consult an attorney if you have any questions about how the laws apply to your library.*]

There are many federal, state, and local laws, statues, and regulations that relate to public libraries. A few of these will be explained more in depth following this non-exhaustive list from the Chief Officers of State Libraries Agencies (COSLA):

## Federal Laws

Numerous federal laws affect public libraries. A small selection of important federal laws is included here:

- <u>American with Disabilities Act</u> (ADA) – Civil rights legislation that makes it illegal to discriminate against people with physical, mental, or emotional disabilities.

- <u>Children's Internet Protection Act</u> (CIPA) – Libraries that receive E-Rate discounts or LSTA grants for Internet connectivity or computers must filter all computers for defined categories of images.

- <u>E-Rate</u> - E-Rate is the commonly used name for the Schools and Libraries Program of the Universal Service Fund, which is administered by the Universal Service Administrative Company (USAC) under the direction of the Federal Communications Commission (FCC). The program provides discounts to assist schools and libraries in the United States to obtain affordable telecommunications and Internet access.

- <u>Employment Laws</u> – Libraries must abide by federal and state laws that prohibit discrimination in relation to hiring, promotion, and all other working conditions of employment.

- <u>Fair Labor Standards Act</u> (FLSA) - FLSA establishes minimum wage, overtime pay, recordkeeping, and youth employment standards affecting employees in the private sector and in Federal, State, and local governments.