UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEAN MARC VAN DEN HEUVEL,<br><br>            Plaintiff,<br><br>     v.<br><br>DOROTHY, et al.,<br><br>            Defendants. | No.  2:21–cv–2176–TLN–CKD PS<br><br>ORDER GRANTING IFP REQUEST &<br>GRANTING LEAVE TO AMEND<br><br>(ECF Nos. 1-2) |

Plaintiff, who is proceeding without counsel in this action, seeks leave to proceed in forma pauperis ("IFP").[1]  (ECF No. 2.)  See 28 U.S.C. § 1915 (authorizing the commencement of an action "without prepayment of fees or security" by a person who is unable to pay such fees).  Plaintiff's affidavit makes the required financial showing, so plaintiff's request is granted.

However, the determination that a plaintiff may proceed without payment of fees does not complete the inquiry.  Under the IFP statute, federal courts must screen IFP complaints and dismiss any case that is "frivolous or malicious," "fails to state a claim on which relief may be granted," or seeks monetary relief against an immune defendant.  28 U.S.C. § 1915(e)(2)(B); Lopez v. Smith, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) ("[S]ection 1915(e) not only permits but requires a district court to dismiss an [IFP] complaint that fails to state a claim.").

---

[1] Because plaintiff is self-represented, all pretrial proceedings are referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302(c)(21).

1

Further, federal courts have an independent duty to ensure that federal subject matter jurisdiction exists. See United Investors Life Ins. Co. v. Waddell & Reed Inc., 360 F.3d 960, 967 (9th Cir. 2004).

**Legal Standards**

A complaint fails to state a claim if it either lacks a cognizable legal theory or sufficient facts to allege a cognizable legal theory. Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). To avoid dismissal for failure to state a claim, a complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, relief cannot be granted for a claim that lacks facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

When considering whether a complaint states a claim upon which relief can be granted, the court must accept the well-pled factual allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and construe the complaint in the light most favorable to the plaintiff, see Papasan v. Allain, 478 U.S. 265, 283 (1986). The court is not, however, required to accept as true "conclusory [factual] allegations that are contradicted by documents referred to in the complaint," or "legal conclusions merely because they are cast in the form of factual allegations." Paulsen v. CNF Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).

In addition, the court must dismiss a case if, at any time, it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). A federal district court generally has jurisdiction over a civil action when (1) a federal question is presented in an action "arising under the Constitution, laws, or treaties of the United States" or (2) there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332(a).

Pleadings by self-represented litigants are liberally construed. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). Unless it is clear that no amendment can cure the defects of a complaint, a self-represented plaintiff proceeding IFP is ordinarily entitled to notice and an opportunity to amend before dismissal. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987), superseded on other grounds by statute as stated in Lopez, 203 F.3d 1122; Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir. 1984). Nevertheless, leave to amend need not be granted when further amendment would be futile. See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996).

**The Complaint**

Plaintiff names as defendants three librarians employed by the El Dorado County Public Library, identifying them only by their first names: Dorothy and Krystal, who work at the Placerville Branch, and Carolyn, who is listed as the "head librarian" for the County Library overall, and also as the "enforcer of unethical banishments and exclusions." (ECF No. 1 at 2.) The complaint is difficult to follow and lists no causes of action, but it appears that plaintiff wishes to assert claims under 42 U.S.C. § 1983 for constitutional deprivations arising from his temporary suspension from all branches of the County Library. (Id. at 4-8.)

As best the court can tell, plaintiff and defendant Dorothy had some sort of argument over printing costs at the Placerville Branch, leading to plaintiff receiving a "notice" of a one-week "expul[s]ion" and being escorted out of the library by police. (Id. at 4-5.) The complaint also refers to defendant Carolyn, the head librarian, imposing "extended expul[s]ions" which seem to have applied to all branches of the County Library. (Id. at 6-7.) The extended expulsion may have lasted for several weeks, but it is unclear exactly when it was imposed or for how long. (See id. (stating "#4 weeks," and "#5 weeks").) Defendant Krystal is mentioned only in the context of having misinformed plaintiff about when his suspension would end, as it was apparently moved from November 5 to November 9, 2021. (Id. at 7.)

The complaint suggests that plaintiff was suspended for violating the County Library's code of conduct, as it describes the typical suspension appeals processes for various public library systems. Although plaintiff calls the librarian defendants "Nazis" and generally describes the

3

library's regulations as "extremely harsh" (id. at 4-5, 7), he does not indicate what the stated basis for his suspension was. The complaint does suggest that plaintiff was a regular visitor of various of the branches, sometimes with his emotional support dog. (Id. at 4-7.)

Plaintiff alleges that he has certain disabilities, and his IFP application indicates that he lives out of his truck. He accuses the librarian defendants of "ignoring [the] civil rights due for handicapped persons [utilizing] their public libraries" and interfering with his ability to use the library to process his self-represented legal claims in the courts. (Id. at 4-6.) He seeks $100,000 in damages for these injuries. (Id. at 4-5.)

**Analysis**

Plaintiff's complaint currently fails to state a claim upon which relief can be granted. However, because he may have at least two colorable legal claims, he will be given an opportunity to amend the complaint to allege the necessary facts to support those claims if he can do so in good faith.

*1.    First Amendment Claim*

First, the facts suggest that plaintiff may be able to assert a violation of the First Amendment right of access to public libraries. The First Amendment's protection of the "right to receive information and ideas" has been held to encompass "the right to some level of access to a public library." Kreimer v. Bureau of Police for Town of Morristown, 958 F.2d 1242, 1255 (3d Cir. 1992). That right, of course, is not without limits. Id.; Doyle v. Clark Cty. Pub. Libr., No. C-3-07-0003, 2007 WL 2407051, at *5 (S.D. Ohio Aug. 20, 2007) ("The right of the public to use the public library . . . is not absolute—it can be lost for engaging in conduct inconsistent with the purpose of public libraries . . . .").

"Most courts addressing this issue have relied on Kreimer to hold that a public library is 'a limited public forum.'" Grant-Davis v. Bd. of Trustees of Charleston Cty. Pub. Libr., No. 2:15-CV-2676-PMD-MGB, 2017 WL 9360875, at *19 (D.S.C. May 24, 2017) (compiling cases). "As a limited public forum, the Library is obligated only to permit the public to exercise rights that are consistent with the nature of the Library and consistent with the government's intent in designating the Library as a public forum." Kreimer, 958 F.2d at 1261 (recognizing library's

purpose "to aid in the acquisition of knowledge through reading, writing and quiet contemplation"). Thus, a library's enforcement of a rule against (for example) harassing others or noisy activities likely does not violate the First Amendment, provided it is applied reasonably. See id. at 1263 (applying "reasonableness" standard and noting that "[p]rohibiting disruptive behavior is perhaps the clearest and most direct way to achieve maximum library use."); Grant-Davis, 2017 WL 9360875, at *22-23 (dismissing First Amendment claim where plaintiff was denied access to library for having violated its rules prohibiting "loud unreasonable, and or disturbing actions" and "[t]hreatening behavior toward another person, either verbally or physically"); Brinkmeier v. City of Freeport, No. 93 C 20039, 1993 WL 248201, at *5 (N.D. Ill. July 2, 1993) ("[A] rule which prohibits disruptive behavior in a public library is at least conceptually inoffensive to the First Amendment.").

Here, a First Amendment claim is possible because plaintiff has adequately alleged that "what led to [him] being banned from the library . . . was application or enforcement by library personnel of some library rule or regulation." See Berry v. Montilla, No. 3:16-CV-530 (AWT), 2018 WL 8729591, at *13 (D. Conn. Mar. 28, 2018). But what is missing is an explanation of what conduct or activity plaintiff was engaging in that the library staff sought to punish or prohibit by suspending him. At the screening stage, plaintiff need not identify specifically what rule or regulation was being enforced, but he must provide sufficient facts for the court to plausibly infer that the library was prohibiting conduct protected by the First Amendment and within the scope of the purposes to which a library is dedicated. See Kreimer, 958 F.2d at 1261.

The complaint's references to police involvement suggest that there may have been some level of physical altercation or other extended disturbance that caused his suspension. If so, it will be more difficult for plaintiff to state a First Amendment claim because a library's enforcement powers are at their peak when protecting the security of its staff or other patrons. See Spreadbury v. Bitterroot Pub. Libr., 862 F. Supp. 2d 1054, 1056 (D. Mont. 2012) (upholding library's termination of plaintiff's right to access library after he intimidated both library staff and other patrons with his "disruptive" behavior); Grant-Davis, 2017 WL 9360875, at *22-23. The court does not assume that is necessarily what happened here but mentions this aspect of the law

5

in order to explain to plaintiff why he must provide more detail as to the facts leading up to his suspension(s) in order to proceed with a First Amendment claim.

As discussed below, in order to proceed with such a claim against any of the three named defendants, plaintiff will also need to clarify exactly how each defendant personally contributed to the constitutional violation asserted.

### 2. Due Process Claim

Next, plaintiff appears to be attempting to assert a procedural due process claim under the Fourteenth Amendment, based on the suspension of his library privileges without proper notice or procedural safeguards.

The Due Process Clause provides that no person shall be deprived of life, liberty or property without due process of law. In analyzing a procedural due process claim, a court must determine (1) whether the claimant has been deprived of a liberty or property interest protected by the Constitution; and (2) if so, whether the procedures surrounding that deprivation were constitutionally sufficient. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989). A person may be constitutionally deprived of a liberty interest if afforded due process. Pinnacle Armor, Inc. v. United States, 648 F.3d 708, 716 (9th Cir. 2011). Thus, to adequately state a procedural due process claim, the plaintiff must allege facts to plausibly show both that (1) he had a constitutionally protected property or liberty interest, and (2) he was deprived of that interest without the necessary procedural protections.

As to the first element, some courts have recognized a protected liberty interest in the use of a public library, grounded in the First Amendment right discussed above. See Doyle v. Clark Cty. Pub. Libr., No. C-3-07-0003, 2007 WL 2407051, at *5 (S.D. Ohio Aug. 20, 2007) ("The right of the public to use the public library is best characterized as a protected liberty interest created directly by the First Amendment."); Wayfield v. Town of Tisbury, 925 F. Supp. 880, 885 (D. Mass. 1996). In Doyle, the court accepted a two-year ban, while in Wayfield the court found a four-month suspension sufficient to implicate a liberty interest protectible under the Fourteenth Amendment. See Doyle, 2007 WL 2407051, at *4-5; Wayfield, 925 F. Supp. at 882, 885.

////

Here, it is unclear either how long plaintiff was suspended or how broadly his suspension(s) applied. A one-week suspension from one branch library, when others appear equally accessible to plaintiff, likely would not give rise to a protectible liberty interest. See Grigsby v. City of Oakland, No. C 01-0010 MMC, 2002 WL 1298759, at *2 (N.D. Cal. June 10, 2002) (holding that a single-evening suspension was a de minimis interruption of library access and "simply does not implicate a cognizable liberty interest") (citing Dittman v. State of California, 191 F.3d 1020, 1029 (9th Cir. 1999) for proposition that governmental restrictions causing only "brief interruption" in ability to pursue chosen occupation or profession do not implicate protected liberty interest). On the other hand, a suspension of several weeks to a month, barring plaintiff from any public library in the county, would likely raise a colorable liberty interest sufficient for screening purposes. <u>In amending the complaint, plaintiff must include more facts clarifying the exact nature of the suspension or suspensions he experienced.</u>

As to the second element, the complaint contains insufficient facts to determine whether or not plaintiff can plead that he was suspended without the proper procedural safeguards. "Due process is flexible and calls for such procedural protections as the particular situation demands." Armstrong v. Meyers, 964 F.2d 948, 950 (9th Cir. 1992) (quoting Mathews v. Eldridge, 424 U.S. 319, 334 (1976)). In determining what amount of process is due before a government actor may deprive a citizen of liberty or property, courts balance three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest." Mathews, 424 U.S. at 335. "The essential requirements of due process . . . are notice and an opportunity to respond." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985).

Thus, in order to satisfy the second element of the analysis, <u>plaintiff must at minimum explain what process he was or was not afforded by the library—either before or after he was suspended.</u> See Okereke v. Foley, No. CV 17-10220-GAO, 2017 WL 2837003, at *1 (D. Mass. June 30, 2017) (dismissing due process claim for failure to allege "sufficient details as to what process occurred or did not occur before the suspension").

The complaint refers to some sort of "notice of exupl[s]ions" but also suggests that plaintiff may have been escorted out of the library without advance warning on certain occasions. (ECF No. 1 at 5-6.)  <u>In any amended complaint, plaintiff should explain when and how he was informed of his suspension, whether he received any advance notice, and whether and how he was able to respond to the library's proposed or actual suspension of his privileges.</u>  If plaintiff has a copy of any written notice of suspension from the library, it would be helpful to attach the notice to the amended complaint, or at least describe its contents.

Plaintiff is informed that notice and an opportunity to respond <u>pre</u>-suspension is not necessarily required, since in some circumstances, post-suspension process is sufficient.  See, e.g., Doyle, 2007 WL 2407051, at *5 (noting public interest in immediate intervention to protect public safety).  Further, in identifying what process plaintiff believes he should have (but did not) receive, the pleadings should indicate what purpose the proposed process would serve.  See Moore v. Wisconsin Dep't of Admin., No. 11-CV-304-BBC, 2011 WL 1897772, at *2 (W.D. Wis. May 18, 2011) (screening out IFP complaint where pleadings failed to show what purpose a pre-suspension hearing would have served, for instance if he was falsely accused or banned without warning or denied an opportunity for reinstatement).

   **3.**  ***Need for More Specific Allegations Overall***

In addition to the allegations necessary to state the claims outlined above, plaintiff must also provide greater detail regarding the overall timeline of events and how each of the three named defendants were involved.  Although the Federal Rules adopt a flexible pleading policy, a complaint must give each defendant fair notice of what the claim is against them and the grounds on which it rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Fed. R. Civ. P. 8(a) requiring a "short and plain statement" of (1) the grounds for the court's jurisdiction and (2) the claim showing that plaintiff is entitled to relief).  Plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support plaintiff's claims.

Further, to proceed under 42 U.S.C. § 1983, the statute permitting private suits for violation of constitutional rights, a plaintiff must plead that each government-employee defendant, through her own personal acts, committed the constitutional violations in question.

See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Starr v. Baca, 652 F.3d 1202, 1205-07 (9th Cir. 2011) (plaintiff must show either (a) that each defendant directly and personally participated in the harm or (b) some sufficient causal connection between the defendant's conduct and the alleged constitutional violation).  As best the court can tell from the complaint, defendants Dorothy and Krystal did not directly cause plaintiff's suspension or perform any other acts that might infringe his constitutional rights.  Although they may have played a role in the events leading to plaintiff's suspension, it appears that only defendant Carolyn was the "enforcer" of the County Library's rules against plaintiff. [2]  Unless the amended complaint affirmatively shows Dorothy and Krystal's connection to the constitutional deprivations at issue, they should not be named as defendants in any amended complaint.

**Leave to Amend**

In light of plaintiff's pro se status, and because it is possible that plaintiff could allege facts to potentially state the claims described above, the court grants plaintiff an opportunity to amend the complaint.  See Lopez, 203 F.3d at 1130 ("leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect") (cleaned up).

If plaintiff elects to file an amended complaint, this new pleading shall be captioned as the "First Amended Complaint" and must set forth each of plaintiff's legal causes of action in separate sections clearly identifying which defendant(s) are allegedly at fault for each claim, and clearly identifying what legal cause of action is being asserted (for example: Claim I against defendants X, Y, and Z for "Due Process Violation," Claim II against defendants X and Y for "First Amendment Violation").  Under each section, plaintiff must then list the specific factual allegations supporting that particular claim.  (For brevity, plaintiff may refer to specific prior paragraphs.)  For each claim, plaintiff must allege what specific conduct defendant engaged in, when the conduct occurred, and how the conduct harmed him.  However, the statement of the claim should be kept relatively "short."

---

[2] Should an amended complaint ultimately warrant court-performed service, it will be necessary for plaintiff to provide the full name of each defendant to be served.  The court notes that El Dorado County Library lists Carolyn Brooks as its Director of Library Services. https://eldoradolibrary.org/contact-us/.

Plaintiff is informed that the court cannot refer to a prior complaint or other filing in order to make the first amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a general rule, an amended complaint supersedes the original complaint, and once the first amended complaint is filed, the original complaint no longer serves any function in the case.

Finally, nothing in this order requires plaintiff to file a first amended complaint.  If plaintiff determines that he is unable to amend the complaint in compliance with the court's order, he may alternatively file a notice of voluntary dismissal of his claims without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).

## ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's request to proceed in forma pauperis (ECF No. 2) is GRANTED;
2. **Within 30 days** of this order, plaintiff shall file either (a) a first amended complaint in accordance with this order, or (b) a notice of voluntary dismissal of the action; and
3. Failure to timely comply with this order will result in a recommendation that the action be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(b).

Dated:  January 10, 2022

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

19.vand.2176

10